IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **TENNESSEE RIVERKEEPER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Case No. 3:24-cv-00883** |
| ) | **Judge Aleta A. Trauger** |
| **WASTE CONNECTIONS OF** ) | |
| **TENNESSEE, INC.**[1] ) | |
| ) | |
| **Defendant.** ) | |

# MEMORANDUM

This case is an environmental citizen suit brought under the Clean Water Act and the Resource Conservation and Recovery Act. For the reasons set forth herein, the defendant's pending Motion to Dismiss (Doc. No. 15) will be granted under Rule 12(b)(1), for lack of subject matter jurisdiction.

I. **FACTS AND PROCEDURAL HISTORY**

The plaintiff, Tennessee Riverkeeper, Inc. ("Riverkeeper"), is a non-profit corporation "dedicated to the preservation, protection, and defense of the Tennessee and Cumberland Rivers and their tributaries." (Doc. No. 2 at 3; Doc. No. 1 ¶ 21.) The defendant, Waste Connections of Tennessee, Inc. ("Waste Connections"), is a privately held corporation. (Doc. No. 17 at 1.) Waste Connections conducts landfilling operations at its Hermitage property abutting the Stones River. (Doc. No. 1 ¶¶ 7, 58–59; Doc. No. 1-1 at 3.)

---

[1] The Complaint's caption omits the defendant's corporate status. (Compare Doc. No. 1 at 1, *with* Doc. No. 17 at 1.)

According to the Complaint, "Tennessee Riverkeeper's scientist observed a discharge of discolored water into Stones River on June 6, 2023, June 27, 2023, and September 22, 2023." (Doc. No. 1 ¶ 57.) The alleged discharge came from a "seep or spring on the banks of the river" on the defendant's property."[2] (*Id.* ¶¶ 58–59.) Riverkeeper's scientist collected a water sample on September 22, 2023.[3] (*Id.* ¶ 60.) Laboratory tests revealed the presence of per- and polyfluoroalkyl

---

[2] In its Response—for the first time, as the defendant notes (Doc. No. 25 at 4–5)—Riverkeeper "alleges that the materials buried on-site contain PFAS and other industrial chemicals. These buried materials are a conveyance of these chemicals[.] . . . The buried materials are therefore a point source. They then released these chemicals to groundwater which carries them to Stones River." (Doc. No. 23 at 10.)

3 Some details of the plaintiff's sampling are underspecified. The Complaint alleges the following:

> "Tennessee Riverkeeper's scientist observed a discharge of discolored water into Stones River" on three dates, including September 22, 2023. (Doc. No. 1 ¶ 57.)
> "The location was on the Stones River at or about 36.18270º N, 86.63311º W. This location is a seep or spring on the banks of the river flowing into the river." (*Id.* ¶ 58.)
> "Nashville Planning Department parcel records reveal that this location is owned by Waste Connections of Tennessee." (*Id.* ¶ 59.)
> "Riverkeeper's scientist collected a water sample on the September 22, 2023 visit." (*Id.* ¶ 60.)

Thus, the "location" the plaintiff describes is the location of the discharges the plaintiff alleges. And that location is "on the banks of the river flowing into the river" at or about the specified GPS coordinates—which, the defendant states, and, the court, taking judicial notice of Google Maps results, agrees, "[w]hen mapped . . . appears to be in the middle of the river." (Doc. No. 16 at 8 n.8.)

But the sampling's location is unclear. First, the Complaint is ambiguous about—and the Response does not clarify—whether Riverkeeper's scientist drew water from Stones River, as indicated by the GPS coordinates, or from the discharge the plaintiff alleges emanated from the defendant's property. Second, as the defendant points out in its letter responding to the Notice, the sample's chain of custody form, which Riverkeeper appended to its Notice, lists two different samples taken on September 22, 2023: one from "Stoners Spring" at 11:40 A.M., and one from "Stones River Spring" at 1:00 P.M. (*See* Doc. No. 16-5 at 5 (describing Doc. No. 1-1 at 9).) The court is able to resolve this ambiguity only because Riverkeeper filed the identical chain of custody form in a similar case concerning the other water sample the form lists. *See* Exhibit A at 13, Chain of Custody, *Tenn. Riverkeeper, Inc. v. Tweden*, No. 3:24-cv-886 (M.D. Tenn. July 22, 2024), (ECF No. 1-1) (listing the sample as from "Stoners Spring"). According to both parties, Stoners Creek

2

substances ("PFAS") in the water sample. (*Id.*; Doc. No. 1-1 at 7–9.) "PFAS" refers to a class of man-made chemicals that, the plaintiff states, may harm humans and animals. (Doc. No. 1 ¶¶ 62–63.)

On March 25, 2024, Riverkeeper sent Waste Connections a Notice of Intent to Sue Letter ("Notice") (Doc. No. 1 ¶ 12), to which Waste Connections responded. (Doc. No. 16 at 19.)[4] According to Riverkeeper, after it gave notice, "the violations complained of have not ceased, and are ongoing and neither the EPA nor the State of Tennessee has commenced and diligently prosecuted . . . [an] enforcement action." (Doc. No. 1 ¶ 16; *see also id.* ¶ 67 ("The violations set forth in the paragraphs above and in the March notice are continuing and ongoing, or are likely to recur, as of the date this Complaint is being filed.").) On July 22, 2024, the plaintiff filed the operative Complaint (Doc. No. 1.) The defendant has filed a Motion to Dismiss (Doc. No. 15), accompanying Memorandum (Doc. No. 16), and exhibits (Doc. Nos. 16-1 through 16-5), to which the plaintiff has filed a Response (Doc. No. 23) and an accompanying exhibit (Doc. No. 23-1.) The defendant has filed a Reply (Doc. No. 25) and accompanying exhibits (Doc. Nos. 25-1 through 25-5).

Riverkeeper alleges three counts: violations of the Clean Water Act (Doc. No. 1 ¶¶ 68–78 ("Count One")), violations of the Resource Conservation and Recovery Act (*id.* ¶¶ 79–88 ("Count Two")), and a claim for "injunctive relief" (*id.* ¶¶ 89–95 ("Count Three")). Waste Connections moves for dismissal under Rules 12(b)(1) and 12(b)(6). Waste Connections argues that this court lacks subject matter jurisdiction because the plaintiff provided inadequate notice of intent to sue

---

is a tributary of Stones River. (*See* Doc. No. 16-5 at 5); *accord* Amended Complaint ¶ 27, *Tenn. Riverkeeper, Inc. v. Tweden*, No. 3:24-cv-886 (M.D. Tenn. Nov. 12, 2024), (ECF No. 17).

4 Riverkeeper's Notice and Waste Connection's response letter are in the record at Doc. Nos. 1-1 and 16-5, respectively. While Waste Connections contests the Notice's legal sufficiency, (*see* Doc. No. 16 at 7–9), it does not contest service.

3

(Doc. No. 16 at 7–9), the plaintiff's environmental claims are "wholly past" (*id.* at 9–11), and because the plaintiff lacks standing (*id.* at 11–15). In the alternative, Waste Connections argues that Riverkeeper failed to state a claim for any of its counts: the Clean Water Act claim does not identify a point source or discharge of pollutants from the defendant's property (*id.* at 15–18), the Resource Conservation and Recovery Act claim ignores the defendant's permit and relies on inapplicable regulations (*id.* at 18–20), and a claim for injunctive relief is not a cause of action (*id.* at 20–21).

Because the court finds the jurisdictional argument to be dispositive, the court will dismiss the Complaint under Rule 12(b)(1), without reaching the defendant's arguments for dismissal under Rule 12(b)(6).

## II.     LEGAL STANDARD – RULE 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs dismissal for lack of subject matter jurisdiction. "Rule 12(b)(1) motions to dismiss . . . generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin–Williams Co.,* 491 F.3d 320, 330 (6th Cir. 2007). When a Rule 12(b)(1) motion challenges subject matter jurisdiction based on the face of the complaint, as this one does, the plaintiff's burden is "not onerous." *Musson Theatrical Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). A court evaluating this sort of facial attack to the assertion of subject matter jurisdiction must consider the allegations of fact in the complaint to be true and evaluate jurisdiction accordingly. *See Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).

## III.     STATUTORY BACKGROUND

Riverkeeper brings this case to enforce the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et. seq.*, commonly known as the Clean Water Act ("CWA"), and the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et seq.* The CWA's purpose is to

4

"restore and maintain the . . . integrity of the Nation's waters" 33 U.S.C. § 1251(a), which it does by "insisting that a person wishing to discharge *any* pollution into navigable waters first obtain EPA's permission to do so." *Cnty. of Maui v. Haw. Wildlife Fund*, 590 U.S. 165, 170 (2020) (emphasis in original). Meanwhile, "Congress enacted the RCRA to end the environmental and public health risks associated with the mismanagement of hazardous waste." *United States v. Kentucky*, 252 F.3d 816, 822 (2001) (citation omitted). The RCRA does this by prohibiting treatment, storage, or disposal of hazardous waste without a permit. 42 U.S.C. § 6925(a). Both laws contain "citizen suit" provisions, which authorize enforcement by citizens after notice and when the government has failed to bring an enforcement action. 33 U.S.C. § 1365 (CWA); 42 U.S.C. 6972 (RCRA).

A. **Clean Water Act**

Congress passed the CWA to protect water quality through the establishment of: (i) federal "effluent limitations" to restrict the quantity, rate, and concentration of discharges of pollutants to waters of the U.S., and (ii) state "water quality standards" for all waters within state boundaries. *See Arkansas v. Oklahoma*, 503 U. S. 91, 101 (1992). The CWA's objective is to eliminate the "discharge of pollutants into the navigable waters." 33 U.S.C. § 1251. "Discharge of a pollutant" means "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12). A "point source" is "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel . . . from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

The CWA imposes "a default regime of strict liability," according to which the discharge of pollutants into waters of the United States are allowed only if subject to a specific exception. *Sierra Club v. ICG Hazard, LLC*, 781 F.3d 281, 284 (6th Cir. 2015) (quoting *Piney Run Pres. Ass'n v. Cnty. Comm'r*, 268 F.3d 255, 268–69 (4th Cir. 2001)); *see* 33 U.S.C. § 1311(a)

(prohibiting the "discharge of any pollutant"). The "principal exception" to the CWA's blanket prohibition on discharges is those authorized by a permit granted pursuant to the National Pollutant Discharge Elimination System ("NPDES"). *StarLink Logistics Inc. v. ACC, LLC*, 642 F. Supp. 3d 652, 685 (M.D. Tenn. 2022) (Richardson, J.), *aff'd in part, rev'd in part on other grounds and remanded*, 101 F.4th 431 (6th Cir. 2024); *see* 33 U.S.C. §§ 1311(a), 1342; *see also S. Fla. Water Mgmt. Dist. v. Miccosukee Tribe of Indians*, 541 U.S. 95, 101 (2004) (noting that the CWA "requires dischargers to obtain permits that place limits on the type and quantity of pollutants that can be released into the Nation's waters"). "Discharge of pollutants into the waters of the United States without an NPDES permit, or in violation of the terms of an NPDES permit, is typically a violation of the CWA." *Tenn. Clean Water Network v. Tenn. Valley Auth.*, 206 F. Supp. 3d 1280, 1285–86 (M.D. Tenn. 2016) (Crenshaw, J.) (citing 33 U.S. §§ 1311(a), 1342(a), 1365(f)(6)).

    **B.**    **The Resource Conservation and Recovery Act**

The RCRA "is a comprehensive statute governing the generation, transportation, storage, and treatment of hazardous wastes." *United States v. Ekco Housewares, Inc.*, 62 F.3d 806, 809 (6th Cir. 1995). Its primary purpose is "to reduce the generation of hazardous waste" in the first place and "to ensure the proper treatment, storage, and disposal of that waste which is nonetheless generated, 'so as to minimize the present and future threat to human health and the environment.'" *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 483 (1996) (quoting 42 U.S.C. § 6902(b)). Pursuant to these statutory objectives, the RCRA contemplates that states will develop solid waste management plans pursuant to regulatory guidelines promulgated by the EPA. *See* 42 U.S.C. §§ 6941–6949. RCRA requires that such plans must, among other things, prohibit the establishment of open dumps or operation of existing open dumps. *See* 42 U.S.C. §§ 6943–6945.[5]

---

    5 The RCRA defines an open dump as "any facility or site where solid waste is disposed of which is not a sanitary landfill which meets the criteria promulgated under [42 U.S.C. § 6944]

6

### C. Citizen Suits

The EPA and the states have primary enforcement authority under the CWA and RCRA. *See S. Side Quarry, LLC v. Louisville & Jefferson Cnty. Metro. Sewer Dist.*, 28 F.4th 684, 690 (6th Cir. 2022). The CWA grants the government a significant "enforcement arsenal," including "administrative, civil, and criminal sanctions." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 53 (1987). In addition, however, the CWA includes a citizen suit provision that permits a private party with a constitutionally sufficient injury to "commence a civil action on his own behalf . . . against any person . . . who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation." 33 U.S.C. § 1365(a). A private party's authority to enforce the CWA is narrower than a regulatory agency's. For example, a private party cannot file a citizen suit without giving a 60-day notice to the government and the potential defendant, and, if the government chooses to pursue the matter itself, the citizen plaintiff may not do so unless the government fails to prosecute the matter diligently. *See* 33 U.S.C. § 1365(b).

The RCRA has a "strikingly similar" citizen suit provision to the CWA's. *Davis v. Sun Oil Co.*, 953 F. Supp. 890, 893 (S.D. Ohio 1996), *aff'd*, 148 F.3d 606 (6th Cir. 1998). It provides that any citizen may commence a civil action against any person "who is alleged to be in violation of

---

and which is not a facility for disposal of hazardous waste." 42 U.S.C. § 6903(14). Section 6944, in turn, requires the EPA Administrator to:

> promulgate regulations containing criteria for determining which facilities shall be classified as sanitary landfills and which shall be classified as open dumps . . . . At a minimum, such criteria shall provide that a facility may be classified as a sanitary landfill and not an open dump only if there is no reasonable probability of adverse effects on health or the environment from disposal of solid waste at such facility.

42 U.S.C. § 6944(a). The aforementioned criteria are located at 40 C.F.R. §§ 257.1–257.4.

7

any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to" the Act. 42 U.S.C. § 6972(a)(1)(A). It likewise contains a notice requirement and diligent prosecution bar. *Id.* § 6972(b)(1)(A), (B).

### 1. Bar on "wholly past" violations

Because the defendant in a citizen-initiated case must be "alleged to be in violation," the citizen suit provisions of the CWA and the RCRA "do[] not permit citizen suits for wholly past violations." *Gwaltney*, 484 U.S. at 64; *see also id.* at 57 (noting that Congress used the "identical ["to be in violation"] language in the citizen suit provisions of several . . . environmental statutes that authorize only prospective relief," including the RCRA citizen suit provision found in 42 U.S.C. § 6972(a)(1)(A)).[6]

The CWA and the RCRA authorize citizen suits against parties only if they are "alleged to be in violation" of a permit, standard, regulation, requirement, or similar. 33 U.S.C. § 1365(a); 42 U.S.C. § 6972. "Citizens must prove 'a state of either continuous or intermittent violation' to prevail." *Tamaska v. City of Bluff City*, 26 F. App'x 482, 485 (6th Cir. 2002) (quoting *Gwaltney*, 484 U.S. at 57); *see also Day, LLC v. Plantation Pipe Line Co.*, 315 F. Supp. 3d 1219, 1238 (N.D. Ala. 2018) ("The inescapable prospective orientation of the phrase 'in violation' is mirrored by the relief the CWA affords plaintiffs suing under the citizen-suit provision, which does not give citizen-plaintiffs the right to damages." (internal quotation marks omitted)). "It is well established that the CWA does not permit citizens' suits for violations that were wholly in the past." *Ward v.*

---

[6] "Indeed, the structure of the citizen-suit provisions in the CWA and RCRA is 'essentially the same.' For this reason, courts commonly construe the citizen-suit provisions of the CWA and RCRA (and other federal environmental laws) in gross." *StarLink Logistics*, 642 F. Supp. 3d at 686 n.22 (quoting *Vernon Village, Inc. v. Gottier*, 755 F. Supp. 1142, 1152 (D. Conn. 1990) and citing *Walls v. Waste Res. Corp.*, 761 F.2d 311, 315–16 (6th Cir. 1985)).

*Stucke* ("*Ward II*"), No. 21-3911, 2022 WL 1467652, at *3 (6th Cir. May 10, 2022) (citing *Gwaltney*, 484 U.S. at 57). "Citizens who bring CWA citizen suits only for past violations lack standing." *Ward v. Stucke* ("*Ward I*"), No. 3:18-CV-263, 2021 WL 4033166, at *5 (S.D. Ohio Sept. 3, 2021) (citing *Ailor v. City of Maynardville*, 368 F.3d 587, 596-97 (6th Cir. 2004)), *aff'd*, No. 21-3911, 2022 WL 1467652 (6th Cir. May 10, 2022). "Litigants bringing citizen suits can establish an ongoing violation in two ways: '1) by proving violations that continue on or after the date the complaint is filed, or 2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations.'" *Ward II*, 2022 WL 1467652, at *2 (quoting *Tamaska*, 26 F. App'x at 485).

At the same time, the Supreme Court has recognized that standing is conferred by good faith allegations of continuous or intermittent violations. *Gwaltney*, 484 U.S. at 64. "The analysis to determine whether sufficient proof exists to establish an ongoing violation is different from the one undertaken to determine whether an ongoing violation has been alleged for jurisdictional purposes." *Appalachian Voices, Inc. v. Nally & Hamilton Enters., Inc.*, No. CIV. 11-133-GFVT, 2012 WL 1084924, at *3 (E.D. Ky. Mar. 30, 2012); *see also Ohio Pub. Int. Rsch. Grp. v. Laidlaw Env't Servs., Inc.*, 963 F. Supp. 635, 640 (S.D. Ohio 1996) (recognizing that "proving on-going violations of environmental standards at the pleading stage, without the benefit of discovery, would often be an insurmountable obstacle to the initiation of a citizen suit"). But even on a motion to dismiss, it is the plaintiff's burden to establish standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). And standing "cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record." *Bearden v. Ballad Health*, 967 F.3d 513, 518 (6th Cir. 2020) (quoting *Fednav, Ltd. v. Chester*, 547 F.3d 607, 617 (6th Cir. 2008)). "[N]or will 'naked assertion[s] devoid of further factual enhancement' suffice." *White v. United*

*States*, 601 F.3d 545, 552 (6th Cir. 2010) (second alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). If the plaintiff does not have standing, the court lacks subject matter jurisdiction over the plaintiff's claims. *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 385–86 (6th Cir. 2020) (citing *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017)).

IV. DISCUSSION

    A. The Alleged Violations Are Wholly Past

Waste Connections moves to dismiss under Rule 12(b)(1) because, it argues, Riverkeeper alleges only wholly past violations of the CWA and RCRA, which do not give citizen-plaintiffs standing. (Doc. No. 16 at 9–11.) The court agrees.

In the absence of a good faith allegation of continuous or intermittent violations, the court lacks jurisdiction over claims brought under the CWA's or the RCRA's citizen suit provisions. *Accord Ailor*, 368 F.3d at 598–99; *Pirgim Pub. Int. Lobby v. Dow Chem. Co.*, No. 95-CV-73286-DT, 1996 WL 903838, at *3 (E.D. Mich. Feb. 16, 1996) ("Being approximately 20 months prior to the filing of their complaint, and without any other factual allegations, plaintiffs' 'ongoing and continuous' allegation is rendered a mere conclusory statement upon which the Court's jurisdiction cannot rest. Accordingly, the Court finds that plaintiffs have failed to properly allege a continuous or intermittent violation of the permit[] . . . in good faith.").

Riverkeeper alleges that its "scientist observed a discharge of discolored water into Stones River on June 6, 2023, June 27, 2023, and September 22, 2023." (Doc. No. 1 ¶ 57.) On September, 22, 2023, Riverkeeper alleges, it collected a water sample that contained PFAS, according to laboratory testing. (*Id.* ¶ 60.) According to Riverkeeper, "the violations complained of have not ceased, and are ongoing" (*id.* ¶ 16") "or are likely to recur." (*Id.* ¶ 67.)

Riverkeeper seems to assume that, because the three observed water-discharges it alleges were discolored, and because the September water sample contained PFAS, they all did. But the

10

defendant correctly states that "only the September event is supported by a factual allegation of a pollutant in a waterbody." (Doc. No. 16 at 10.)[7] Riverkeeper has not alleged that PFAS sometimes or always cause water discoloration at any concentration, let alone that of the sample. Without such a statement, and in the absence of common knowledge that PFAS cause discoloration, Riverkeeper has alleged a *pollutant* discharge on only September 22, 2023. That is, even if Riverkeeper observed a water discharge on multiple dates, "water itself is not a pollutant." *Ward II*, 2022 WL 1467652, at *3 (citing 33 U.S.C. §1362(6)). And "simply moving water from one place to another . . . does not constitute the discharge of a pollutant under the CWA." *Id.* (quoting *Bettis v. Town of Ontario*, 800 F. Supp. 1113, 1119 (W.D.N.Y. 1992)) (internal quotation marks omitted). In other words, Riverkeeper has alleged one instance of a pollutant discharge ten months before filing this lawsuit.

As the Supreme Court stated in *Gwaltney*, Congress's decision to permit citizen suits based on good faith accusations reflected a "conscious sensitivity to the practical difficulties of detecting and proving chronic episodic violations of environmental standards." 484 U.S. at 65; *see also Ward I*, 2021 WL 4033166, at *7 (recognizing that "proving on-going violations of environmental standards at the pleading stage, without the benefit of discovery, would often be an insurmountable obstacle to the initiation of a citizen suit" (citation omitted)); *Ohio Pub. Int. Rsch. Grp.*, 963 F. Supp. at 640 ("The mere fact that good faith allegations of continuing violations in the complaint are premised in part on specific violations that occurred before the commencement of the suit does not render the allegations impotent for the purpose of supporting a finding of subject matter jurisdiction."). Thus, "Congress intended a good-faith allegation to suffice for jurisdictional

---

7 The defendant offers, as an alternative explanation for the observed water-discoloration, that "groundwater . . . can be tinted due to naturally occurring minerals and other substances." (Doc. No. 16 at 10.)

purposes," such that a defendant does not need to "'be in violation' of the Act at the commencement of suit; rather, the statute requires that a defendant be "*alleged* to be in violation." *Gwaltney*, 484 U.S. at 64–65 (emphasis in original).

But the "type of good faith allegation that the citizen suit provision envisions . . . is a good faith allegation of *facts* constituting a violation." *Tenn. Riverkeeper, Inc v. Afrakhteh*, No. 3:23-cv-00749, 2024 WL 2947255, at *6 (M.D. Tenn. June 11, 2024) (emphasis added). As the Supreme Court put it, a citizen-plaintiff need not prove the allegations when pleading them, but its allegations must be "well grounded in fact." *Gwaltney*, 484 U.S. at 65 (quoting Fed. R. Civ. P. 11 (1987)). This court, therefore, "construes the citizen suit provision to require a good faith assertion of facts constituting a continuous or recurring violation, not simply a good faith belief that the continuing violation requirement was satisfied." *Afrakhteh*, 2024 WL 2947255, at *6.[8]

Riverkeeper's Complaint, however, contains no such good faith allegation of ongoing violations by Waste Connections.[9] Riverkeeper has *stated* that Waste Connections' violations are ongoing. To wit:

---

8 *Accord Ohio Valley Env't Coal., Inc. v. Alex Energy, Inc.*, 12 F. Supp. 3d 844, 864–65 (S.D.W. Va. 2014) ("To meet the jurisdictional requirements, Plaintiffs must show that at the time they filed suit, they had a good-faith belief that each Defendant was in continuous or intermittent violation of the CWA . . . . In a jurisdictional sense, then, this good-faith belief is an element of each of Plaintiffs' claims.").

9 *Cf., e.g.*, *Clean Water & Air Legacy, LLC v. Tofte Wastewater Treatment Ass'n*, 649 F. Supp. 3d 764, 773 (D. Minn. 2023) (denying motion to dismiss where the complaint alleged violations "every year since 2018, which could conceivably rise to the level of intermittent or sporadic violations," and finding that, "[i]f these violations happen every year, there is a reasonable likelihood they will continue that trend"); *Charleston Waterkeeper v. Frontier Logistics, L.P.*, 488 F. Supp. 3d 240, 258 (D.S.C. 2020) (finding allegations of ongoing violations where the plaintiff alleged that, "[a]s of the filing of this Complaint, after six months of concerted sampling, the Waterkeeper continues to find plastic pellets in significant concentrations at sites across the Charleston area, particularly those closest to the Facility"); *Ohio Pub. Int. Rsch. Grp.*, 963 F. Supp. at 641 ("[P]laintiffs have not only made reasonable contentions that there was an evidentiary foundation underlying their factual assertions of continuing violations, but they have provided

12

> "Waste Connections *is violating* the CWA and RCRA due to *allowing the discharge of pollutants* . . . ." (Doc. No. 1 ¶ 2 (emphasis added).)

> "Since Riverkeeper gave notice, *the violations complained of have not ceased, and are ongoing*." (*Id.* ¶ 16 (emphasis added).)

> "The violations set forth in the paragraphs above and in the March notice *are continuing and ongoing, or are likely to recur*, as of the date this Complaint is being filed." (*Id.* ¶ 67 (emphasis added).)

Describing the Complaint, Riverkeeper argues that it "has made a good faith allegation of an ongoing violation" because it "has given dates of three occasions when the discharge was observed, including one where a sample was collected" and found to contain PFAS. (Doc. No. 23 at 6; *see also id.* at 3 (stating that its Notice "sufficiently alleged an ongoing violation with the statement 'Tennessee Riverkeeper's scientist observed a discharge of discolored water into Stones River on June 6, 2023, again on June 27, 2023, and a third time on September 22, 2023.'").) Thus, Riverkeeper argues, it has "shown a consistent discharge prior to filing the lawsuit." (*Id.* at 6.). Riverkeeper does not respond to Waste Connection's argument that, in fact, it has alleged a pollutant discharge on only one occasion. Regardless, there are no non-conclusory averments, and no facts alleged, that support the plaintiff's contention that violations of the CWA or the RCRA are ongoing.

The plaintiff cites Justice Scalia's *Gwaltney* concurrence for the proposition that "a polluter remains 'in violation' of the CWA 'so long as it has not put in place remedial measures that clearly eliminate the cause of the violation,'" which, Riverkeeper says, the defendant has not done. (Doc. No. 23 at 6 (quoting *Gwaltney*, 484 U.S. at 69 (Scalia, J., concurring in part)).) That is, the plaintiff

evidence that this is the case. Having provided this proof, there is little question that its allegations were in good faith.").

13

argues, the defendant has polluted in the past, it has not changed its operations, and so the plaintiff has a good faith basis to allege that it will pollute again.

But it is not clear that the facts of this case fit the theory contemplated in Justice Scalia's concurrence. Justice Scalia's statement would "support . . . a ruling" that a CWA violation is "'continuing' based on the premise that 'until a pollutant . . . that has been placed in a wetland is removed, its presence constitutes a continuing violation.'" *Benham v. Ozark Materials River Rock, LLC*, 885 F.3d 1267, 1275 (10th Cir. 2018) (quoting and affirming *Benham v. Ozark Materials River Rock, LLC*, No. 11-cv-339-JED-FHM, 2015 WL 235759, at *8 (N.D. Okla. Jan. 16, 2015)). But Riverkeeper does not argue that Waste Connections' CWA and RCRA violations are "continuing" or that it "remains in violation" of the CWA or the RCRA because PFAS remain in Stones River, but rather, because Waste Connections "has not claimed to have put in place any remedial measures to clearly eliminate the cause of the violations[,]. Riverkeeper will be able to show . . . that the *discharge* has continued after the filing of the complaint." (Doc. No. 23 at 6.)

In any case, the plaintiff does not cite any in-circuit cases endorsing the view put forth in Justice Scalia's *Gwaltney* concurrence. And courts in this circuit have expressly considered, and rejected the reasoning presented in, the one case the plaintiff cites for support, *City of Mountain Park v. Lakeside at Ansley*, 560 F. Supp. 2d 1288 (N.D. Ga. 2008). *See Ward II*, 2021 WL 4033166, at *9 (rejecting the "broad view of what constitutes an 'ongoing violation," as contemplated by cases like *Mountain Park* and noting that, "even if there was evidence of the continued presence of dredged or fill material, it would not constitute an 'ongoing violation'" (first citing *Mountain Park*, 560 F. Supp. 2d at 1293, and then quoting *Tamaska*, 26 F. App'x at 485)); *Crigler v. Richardson*, No. 3:08-681, 2010 WL 2696506, at *5 (M.D. Tenn. July 7, 2010) (rejecting the view, as expressed in *Mountain Park*, that violations are not wholly past if deposited pollution remains).

14

Finally, "concurrences do not bind lower courts in cases where there is a majority opinion." *United States v. Duvall*, 740 F.3d 604, 610 (D.C. Cir. 2013) (Kavanaugh, J., concurring).

More broadly, the court could interpret the plaintiff's claim that the defendant has not put in place any remedial measures as a fact "from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations." *Allen Cnty. Citizens for the Env't, Inc. v. BP Oil Co.,* No. 91-3698, 1992 WL 138410, *1–2 (6th Cir. June 18, 1992). But as this court has discussed, the plaintiff has alleged only one discharge of pollutants ten months before filing the Complaint. The alleged lack of remedial measures, therefore, is not probative.

Because the court finds that the plaintiff has alleged a wholly past violation, the court will dismiss for lack of subject matter jurisdiction the claims set forth in Counts I and II of the Complaint, asserting violations of the CWA and RCRA based on the discharge of pollutants into a waterway, without reaching the defendant's other jurisdictional arguments.

### B. Standalone RCRA Claim

In Count II of the Complaint, Riverkeeper appears to bring an alternative claim against Waste Connections under the RCRA for operation of an open dump. Riverkeeper alleges that, "[o]n information and belief there was no permit issued for landfilling operations at the site. Waste Connections is in violation of . . . RCRA, as the site constitutes an open dump." (Doc. No. 1 ¶ 82; *see also id.* ¶ 6 ("The Waste Connections site is also an open dump because waste was deposited at the site which is not a sanitary landfill meeting the required regulations."))

Then, Riverkeeper alleges, "*[a]lternatively*, the site constitutes an open dump . . . because, on at least the dates set out above, contaminated water from the site has been discharged, and continues to be discharge[ed] . . . into Stones River in violation of the . . . CWA." (*Id.* ¶ 83 (emphasis added); *see also id.* ¶ 86 (seeking an "enforcement order or injunction ordering [Waste

15

Connections] to remove all solid wastes dumped on [its] property without a landfill permit authorizing the said dumping").)

Although the Notice does *mention* that Waste Connections did not have a landfilling permit, it does not actually state or give notice that Waste Connections was violating RCRA because it did not have a permit. (*See* Doc. No. 1-1 at 3 ("Specifically, the site constitutes an open dump . . . because . . . on at least the dates set out above, contaminated water from the dump site has been discharged, and continues to be discharged . . . into the Stones River in violation of . . . the CWA.").) And the plaintiff's Response to the Motion to Dismiss disavows any RCRA claim unrelated to the pollutant discharges that constitute CWA violations. (*See* Doc. No. 23 at 1 ("This is a citizen's suit . . . for violations of the CWA and RCRA caused by pollutant discharges . . . ."); *id.* at 3 ("Riverkeeper's [Notice] . . . satisfied the notice requirements of both the CWA and RCRA. The notice sufficiently alleged an ongoing violation with the statement 'Tennessee Riverkeeper's scientist observed a discharge of discolored water into Stones River on [three dates]."); *id.* at 6 ("Riverkeeper has made a good faith allegation of an ongoing violation. Riverkeeper has given dates of three occasions when the discharge was observed."); *id.* at 7–8 (arguing Riverkeeper has standing because its standing declarant's aesthetic and recreational values are lessened by the alleged pollution); *id.* at 11 ("Plaintiff has asserted a RCRA claim of open dumping . . . because [Waste Connections] has and continues to discharge pollutants without first obtaining the necessary permits under the CWA."); *id.* at 13 ("the landfill permit [Waste Connections] has does not permit such discharges").

To the extent that Riverkeeper alleges in the Complaint that Waste Connections is violating the RCRA because it lacks a permit, it has abandoned that claim by failing to defend it in its Response. *Accord Doe v. Bredesen*, 507 F.3d 998, 1007 (6th Cir. 2007) ("[The plaintiff]

16

abandoned those claims by failing to raise them in his brief opposing the government's motion to dismiss the complaint."). Accordingly, insofar as the Complaint can arguably be construed as stating in the alternative a RCRA claim based on Waste Connections' failure to have a proper landfill permit, that claim, too, will be dismissed.

### C. Claim for Injunctive Relief

Riverkeeper's injunction claim (Doc. No. 1 ¶¶ 89–95 ("Count Three")) also fails, because "a request for an injunction is not a claim, but merely a remedy for a claim." *Tulis v. Orange*, 686 F. Supp. 3d 701, 717 (M.D. Tenn. 2023) (Crenshaw, C.J.) (citing *Madej v. Maiden*, 951 F.3d 364, 369 (6th Cir. 2020)), *aff'd*, No. 23-5804, 2024 WL 4117021 (6th Cir. Aug. 19, 2024); *accord Auto Konnect, LLC v. BMW of N. Am., LLC*, No. 18-14019, 2021 WL 2195125, at *6 (E.D. Mich. Jan. 6, 2021) ("This claim [for injunctive relief] must be dismissed because injunctive relief is a remedy, not a cause of action." (citation omitted)).[10] Because the substantive claims upon which the requested remedy is premised will be dismissed, the separate claim for injunctive relief will also be dismissed.

---

[10] The court notes that the plaintiff included in its prayer for relief similar requests for injunctive relief. (*Compare* Doc. No. 1 ¶¶ 92–95 (seeking an injunction ordering the defendant to cease discharging pollutants and to remove unpermitted solid waste, and the assessment of civil penalties under the CWA), *with id.* at 16–17 (same).).

17

## V. CONCLUSION

For the foregoing reasons, Waste Connections' Motion to Dismiss will be granted in its entirety based on lack of subject matter jurisdiction, and Riverkeeper's Complaint will be dismissed without prejudice. An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge